In re WHITE et al.

CUMMINGS v. DAY.

(Circuit Court of Appeals, Seventh Circuit. October 4, 1910.)

No. 1,669.

BANKRUPTCY (§ 351*)—PROVABLE CLAIMS—NOTES OF PARTNER PLEDGED BY FIRM.

Where a partner, acting for the firm, pledged as collateral security for a loan to the firm, for which he was indorser, among other collateral, individual notes made by himself to the firm for borrowed money, which were afterward sold by the pledgee in accordance with the terms of the pledge, the purchaser took the same title and rights as though the notes had been those of a third party, unaffected by the fact that the maker was also indorser on the principal debt, and was entitled to prove the notes against the estate of the maker in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 351.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of George E. White and James D. Kline, individually and as copartners under the firm name of George E. White & Co., bankrupts. From an order disallowing a claim against the individual estate of George E. White, Edmund S. Cummings appeals. Reversed.

Edmund S. Cummings, Harry G. Colson, and Theodore Johnson, for appellant.

Charles B. Haffenberg, John D. Hood, A. A. McClanahan, and Jacob G. Grossberg, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge, delivered the opinion:

The appeal is from an order of the Court below, setting aside an order of the Referee in Bankruptcy allowing the claim of appellant against the estate of George E. White, individually, for $75,000., and sustaining the objections of the trustee to the allowance of said claim, and rejecting the same except as to the sum of $425.

George E. White was a copartner in the firm of George E. White & Company, that went into bankruptcy at the same time that George E. White and James D. Kline, the copartners, individually went into bankruptcy. The trustee is the same in both cases. The transaction disclosed in the proof shows, that to secure a loan of money made to him by the firm of George E. White & Company, George E. White individually executed to the firm his notes for $75,000., one for $50,000., and another for $25,000., secured by a trust deed to James D. Kline, as trustee, upon certain real estate in Cook County; that contempo-

raneously, George E. White & Company were borrowers from one Lusch, a loan broker, upon a line of credit that ran sometimes as high as $180,000; that at the time of the bankruptcy proceedings, George E. White & Company owed Lusch about $10,000.; and that to secure this loan of the firm from Lusch, the notes of George E. White, individually, before mentioned, to George E. White & Company, had been given as collateral security to Lusch under a written agreement "by and between George E. White, party of the first part, and Harry B. Lusch, doing business as H. B. Lusch and Company, party of the second part," wherein, after reciting that George E. White & Company had executed and delivered to Harry B. Lusch various promissory notes bearing the endorsement of George E. White individually, and that it was contemplated that from time to time other notes bearing the same endorsement should be delivered, some of such notes to be purchased and retained by Lusch and others to be sold by him as a note broker, it was agreed that, to secure all liability of George E. White & Company to Lusch, George E. White had deposited, and would from time to time thereafter deposit, various stocks, bonds, and notes, and other securities, as collateral security; with the further agreement that, in case of the nonpayment at maturity of the notes of George E. White & Company held by Lusch, the holders of the notes might sell such collateral publicly or privately without advertisement, the party having the right, in case the sale was made publicly, to become the purchaser of such collateral himself. The two notes amounting to $75,000., above mentioned, were included in this collateral given to Lusch, together with the mortgages securing them, which, after the beginning of the bankruptcy proceedings, Lusch sold to appellant at public sale, the terms of the contract, in that respect, being followed —appellant having first relinquished the mortgages; relying solely, for the payment of these notes, upon the personal responsibility of White.

It will be observed that the contract respecting the collateral was "between George E. White, party of the first part, and Harry B. Lusch, doing business as H. B. Lusch and Company, party of the second part," from which it is urged that the notes, as notes belonging to George E. White & Company, though actually put up as collateral under the contract, do not fall within the terms of the contract in that it is not shown that the contract, as such, was ever adopted by George E. White & Company. This objection, however, disappears in the face of the evidence that whatever may have been contemplated in the original contract of pledge, with respect to its being White's collateral solely that was to be put up, White in fact put up the collateral belonging to the firm, of which he was a member, and for the benefit of that firm, from which, in the absence of other evidence (and there is no other evidence) we think it follows, as a presumption, that the terms of the contract were adopted by the firm. Indeed, to rebut this presumption, it would be necessary to show that White had no authority from his firm to do what he did do in pursuance of the contract.

But White being an endorser individually upon the indebtedness due from the firm of George E. White & Company to Lusch, amount-

ing to $40,000., it is said that these notes, put up as collateral, are "double evidence" of the same indebtedness. We think not. The obligation that was put up as collateral, is the obligation of White to the firm, wholly independent of the obligation of White as endorser of the firm to Lusch—as wholly independent as if the notes had been the notes of a stranger to the firm—a collateral that the creditor had the right to ask, that the debtor had the right to give, and that, in the asking and giving, increased the security of the original debt of the firm to Lusch. True, the collateral could not have been used to an extent beyond the debt to which it was collateral, and the debt cannot be allowed except to the extent that the collateral has not paid it, but the sale of the collateral having amounted to but a small proportion of the debt, and the question here being the responsibility of White individually and not of his firm, these questions do not arise.

The order appealed from is reversed, with instructions to allow the claim.